I HEREBY CERTIFY THAT THIS
DOCUMENT WAS SERVED BY FIRST
CLASS MAIL, POSTAGE PREPAID, TO
(SEE BELOW) AT THEIR RESPECTIVE
MOST RECENT ADDRESS OF RECORD IN
THIS ACTION ON THIS DATE

TO:          DATE:    DEPUTY CLERK:

Plaintiff with form on Sept. 5, 2014 by TS

**FILED**
CLERK, U.S. DISTRICT COURT

September 15, 2014

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ TS _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JOSEPH MACHUL, | Case No. CV 14-05214-SVW (DFM) |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| PHILIP L. BROWNING et al., | |
| Defendants. | |

## A.    Procedural History

On July 7, 2014, Plaintiff filed a pro se civil rights complaint. Dkt. 3 ("Complaint"). On July 28, 2014, after initial screening pursuant to 28 U.S.C. § 1915(e)(2), the Court dismissed the Complaint with leave to amend, finding that the Complaint suffered from various pleading deficiencies. Dkt. 8.

On September 8, 2014, Plaintiff filed a first amended complaint. Dkt. 10 ("FAC"). The FAC names Philip L. Browning, Charles Tadlock, Tedji Dessalegn, Vivian Pham, the County of Los Angeles ("County"), the Los Angeles Department of Children and Family Services ("DCFS"), the Superior Court of California for the County of Los Angeles, and Does 1 through 5 as Defendants. Id. at 3-4.

**B.**    **Screening Standard**

In accordance with 28 U.S.C. § 1915(e)(2), the Court has screened Plaintiff's FAC before ordering service for purposes of determining whether the action is frivolous or malicious; or fails to state a claim on which relief might be granted; or seeks monetary relief against a defendant who is immune from such relief.[1]

The Court's screening of the FAC under the foregoing statute is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

Further, because Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and must afford Plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply

---

[1] In the FAC itself, Plaintiff tells the Court that it should not screen the FAC, contending that such an exercise under 28 U.S.C. §1915(e)(2) is an "abuse of discretion" and a "sua sponte defense help for the Defendants." FAC at 8. This contention is meritless. By screening the complaint, the Court is discharging its statutory duty. See, e.g., Stringer v. Doe, No. 5:11cv1/RS/EMT, 2011 WL 2416249, at *2 (N.D. Fla. 2011) (rejecting inmate's claim of bias because compliance with statutory obligation to screen a complaint pursuant to § 1915(e)(2) does not establish bias).

2

essential elements of the claim that were not initially pled." <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)).  Moreover, with respect to Plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (holding that to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)).

**C.**   <u>**Analysis**</u>

After careful review and consideration of the FAC under the foregoing standards, the Court finds that it suffers from the following pleading deficiencies:

**1.**   ***Younger* Abstention and the *Rooker-Feldman* Doctrine**

As with the Complaint, it appears from the face of the FAC that Plaintiff is challenging decisions currently being made or that have been made in state juvenile court dependency proceedings. <u>See, e.g.</u>, FAC ¶¶ 6-7, 12-14, 17-18; <u>see also</u> <u>id</u>. ¶ 3 ("Basically, this case involves the assessment of the 'legality of the juvenile dependency proceedings' involving the parties to this action …."). As that is the case, Plaintiff's claims are precluded by <u>Younger</u> and <u>Rooker</u>-

1  Feldman.

2      A federal court must abstain from hearing a suit if deciding the merits of

3  the suit would interfere with a state proceeding that: (1) is ongoing, (2)

4  implicates important state interests, and (3) provides an adequate opportunity

5  to raise federal questions. Middlesex County Ethics Comm. v. Garden State

6  Bar Ass'n, 457 U.S. 423, 432 (1982); Younger v. Harris, 401 U.S. 37 (1971);

7  see also Mission Oaks Mobile Home Park v. City of Hollister, 989 F.2d 359,

8  360 (9th Cir. 1993). Insofar as the state juvenile dependency court proceedings

9  at issue here are ongoing, then it appears that all three criteria for Younger

10 abstention are met. See H.C. ex rel. Gordon v. Koppel, 203 F.3d 610, 613 (9th

11 Cir. 2000) (dismissing case under Younger where parents sought "wholesale

12 federal intervention into an ongoing state domestic dispute" involving child

13 custody).

14      Even if the state court proceedings are concluded, this Court

15 is precluded from exercising jurisdiction by the Rooker-Feldman doctrine,

16 which provides that federal district courts may not exercise appellate

17 jurisdiction over state court decisions. See District of Columbia Court of

18 Appeals v. Feldman, 460 U.S. 462, 482-86 (1983); Rooker v. Fidelity Trust

19 Co., 263 U.S. 413, 415-16 (1923); see also Bennett v. Yoshina, 140 F.3d 1218,

20 1223 (9th Cir. 1998) (as amended). Review of state court decisions may be

21 conducted only by the United States Supreme Court. Feldman, 460 U.S. at

22 476, 486; Rooker, 263 U.S. at 416; see also 28 U.S.C. § 1257.

23      The Ninth Circuit has applied the Rooker-Feldman doctrine to child

24 dependency proceedings. See Lacy–Curry v. Alameda Cnty Soc. Servs.

25 Agency, 262 F. App'x 9, 10 (9th Cir. 2007) (holding that where all of the

26 plaintiff's claims against a county social services agency, its workers, and a

27 state court "relate to a series of state court child dependency proceedings," the

28 Rooker–Feldman doctrine precluded review of claims related to the concluded

dependency proceedings because the plaintiff "is clearly a state court loser complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced, and she is inviting district court review and rejection of those judgments") (internal alteration and quotation marks omitted); Watkins v. Proulx, 235 F. App'x 678, 679 (9th Cir. 2007) (holding that the district court properly concluded that it lacked subject matter jurisdiction under the Rooker–Feldman doctrine over a section 1983 action alleging constitutional violations arising out of a child custody proceeding in state court because that action amounts to a prohibited de facto appeal, and because the constitutional claims were inextricably intertwined).

Here, Plaintiff's claims against Defendants arising from their actions in the juvenile court case appear inextricably intertwined with, and amount to, a de facto appeal of the state court's orders and judgment. Furthermore, the non-monetary relief Plaintiff seeks here – an injunction against Defendants removing his child from his custody and a declaration that the California juvenile dependency laws are unconstitutional – is precluded by Rooker-Feldman.

Because it appears that the state juvenile dependency proceedings regarding Plaintiff's minor child are ongoing, the Court must abstain from intervention in those proceedings pursuant to Younger. Even if the state juvenile proceedings have concluded and Plaintiff's child has been taken from his custody by the DCFS, the Court would be barred from reviewing these proceedings by the Rooker-Feldman doctrine. The proper avenue for Plaintiff's appeal of a state court judgment lies in the state court appellate system or in the United States Supreme Court, not in a federal court such as this one.

### 2.    Failure to State a Claim Against the County and the DCFS

A local government entity such as the County or DCFS "may not be sued under § 1983 for an injury inflicted solely by its employees or agents.

Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 694 (1978). Thus, the County or DCFS may not be held liable for the alleged actions of its deputies or other agents unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91; accord Redman v. Cnty. of San Diego, 942 F.2d 1435, 1443-44 (9th Cir. 1991).

Here, Plaintiff has failed to identify any policy statements or regulations of the County or DCFS, or any officially adopted or promulgated decisions, the execution of which by County agents or employees allegedly inflicted the injuries about which he is complaining. Plaintiff makes the conclusory allegation that the County and DCFS have a "policy, pattern of [sic] practice and custom of stating that a 'parent shall be deprived of their right to bring up a child without governmental interference, if the parent, has a low income, has been dependent upon welfare or food stamps, of if the parent has a history of drug use.'" FAC ¶ 11. This is insufficient to demonstrate that either the County or DCFS has a governmental custom of removing children from the custody of their parents without good cause. Simply invoking the phrase "policy, custom or practice," as Plaintiff does here, does not satisfy the pleading requirements of a Monell claim. Plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

6

The Court therefore concludes that Plaintiff has again failed to allege sufficient facts for the Court to "draw the reasonable inference" that the County or DCFS has a governmental custom of removing children from parental custody without good cause. Even assuming arguendo that Plaintiff's minor child was removed from his custody without good cause, this single isolated incident does not establish a custom or policy. <u>See, e.g.</u>, <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); <u>Thompson v. Los Angeles</u>, 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), <u>overruled on other grounds</u>, <u>Bull v. City & Cnty. of S.F.</u>, 595 F.3d 964, 981 (9th Cir. 2010) (en banc). Accordingly, the FAC again fails to state a claim against the County and the DCFS.

### 3. Eleventh Amendment Immunity

As the Court advised Plaintiff previously, the Los Angeles County Superior Court and its personnel have absolute Eleventh Amendment immunity from suit. <u>See</u> <u>Simmons v. Sacramento County Superior Court</u>, 318 F.3d 1156, 1161 (9th Cir. 2003) (citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 70 (1989)). Plaintiff is therefore advised that, if he chooses to file an amended complaint, he may not name the Los Angeles County Superior Court or any court employees as defendants.

### 4. Private Actors Generally Cannot Be Named as Defendants in Section 1983 Actions

Plaintiff identifies one of the Doe defendants as an attorney appointed by the superior court to represent him in the juvenile court proceedings, who

Plaintiff contends conspired with the other defendants to place his minor child in a foster home without cause. FAC ¶ 9. However, a lawyer in private practice does not act under color of state law. See Simmons, 318 F.3d at 1161 (private parties do not generally act under color of state law for § 1983 purposes, and conclusory allegations that a private party conspired with a state actor to deprive plaintiff of constitutional rights are insufficient to state a claim).

### 5.   Witness Immunity

To the extent that Plaintiff's claims against one or more of the individual Defendants are based on affidavits to the juvenile dependency court or court testimony, such claims are barred by the doctrine of witness immunity. See Briscoe v. LaHue, 460 U.S. 325, 345-46 (1983); Burns v. County of King, 883 F.2d 819, 822 (9th Cir. 1989) (holding that witnesses are entitled to absolute immunity for statements made in an affidavit to a court). This doctrine applies even to the extent that Plaintiff alleges that Defendants conspired to provide perjured testimony. Franklin v. Terr, 201 F.3d 1098, 1101-02 (9th Cir. 2000) (holding that the absolute witness immunity doctrine also applies to conspiracy to provide perjured testimony). Thus, to the extent Plaintiff's claims against any of the individual Defendants are based on their testimony in the juvenile dependency court, they are subject to dismissal.

### 6.   Supervisory Liability

Supervisory personnel generally are not liable under 42 U.S.C. § 1983 on any theory of respondeat superior or vicarious liability in the absence of a state law imposing such liability. See, e.g., Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). In Iqbal, 556 U.S. at 676, the Supreme Court reaffirmed that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior liability." However, the Ninth Circuit has concluded that, at least in

cases where the applicable standard is deliberate indifference (such as for an Eighth Amendment claim), Iqbal does not foreclose a plaintiff from stating a claim for supervisory liability based upon the "supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). The Ninth Circuit thus held:

> A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' '[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.'
>
> 'The requisite causal connection can be established . . . by setting in motion a series of acts by others,' or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.' 'A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'

Id. at 1207-08 (internal citations omitted, alterations in original). In addition, to premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation. See, e.g., City of Canton v. Harris, 489 U.S. 378, 385 (1989); Oviatt v. Pearce,

954 F.2d 1470, 1474 (9th Cir. 1992).

Here, Plaintiff names Browning, Director of the DCFS, as a defendant but fails to set forth any specific allegations that he personally participated in the underlying alleged violations of Plaintiff's constitutional rights. Nor does Plaintiff set forth any factual allegations that Browning either personally promulgated any policy that had a direct causal connection with the constitutional injuries of which Plaintiff complains or knowingly acquiesced to the other Defendants' alleged conduct. Plaintiff's claim against Browning accordingly fails to state a claim and is subject to dismissal.

**D.  Conclusion**

Because of the pleading deficiencies identified above, the FAC is subject to dismissal. Because it is not absolutely clear that Plaintiff's pleading deficiencies cannot be cured by amendment, such dismissal will be with leave to amend. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (holding that a pro se litigant must be given leave to amend his complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment).[2]

If Plaintiff still desires to pursue his claims against Defendants, he shall file a Second Amended Complaint within twenty-eight (28) days of the date of this Order. Plaintiff's Second Amended Complaint should bear the docket number assigned in this case; be labeled "Second Amended Complaint"; and be complete in and of itself without reference to the original Complaint or any

---

[2] When the Court dismissed the Complaint, it identified the Complaint's pleading defects. The FAC is nonetheless virtually identical and thus suffers from the same defects. Plaintiff is cautioned that, if he fails to ameliorate the deficiencies identified in this Order and again merely restates the allegations made in the Complaint and the FAC, it may lead to a recommendation that Plaintiff's action be dismissed without leave to amend.

other pleading, attachment or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is strongly encouraged to utilize.

**Plaintiff is admonished that, if he fails to timely file a Second Amended Complaint, the Court may recommend that this action be dismissed with prejudice for failure to diligently prosecute.**

Dated:  September 15, 2014

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

11